IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

LEONAL ANTHONY GARCIA,

Plaintiff,

v.

COSTCO WHOLESALE
CORPORATION,

Defendants.

CIV. NO.: 14-1727 (SCC)

## OPINION AND ORDER

Plaintiff Leonal Anthony García García filed a complaint against his former employer, Costco Wholesale Corporation("Costco"), alleging employment discrimination and unjust dismissal. García seeks compensatory damages, reinstatement, as well as equitable and injunctive relief.

### I. Procedural background

Plaintiff filed suit on September 25, 2014, invoking diversity jurisdiction, and seeking remedies under Law No. 100 of June 30, 1959, ("Law No. 100"), P.R. Stat. Ann. T. 29 § 146 *et seq.*;

Law No. 69 of July 6, 1985, ("Law No. 69") P.R. Stat. Ann. T. 29
§ 1322 *et seq.*; Law No. 80 of May 30, 1976, ("Law No. 80") P.R.
Stat. Ann. T. 29 §§ 185a-185I; Article 1802 of Puerto Rico's Civil
Code, P.R. Stat. Ann. T. 31 § 5141; Puerto Rico's Defamation
Statute, P.R. Stat. Ann. T. 32 § 3141-3149; and Article II,
Sections 1, 8, 16 and 20 of Puerto Rico's Constitution. The
complaint alleges that Costco engaged in unlawful employ-
ment practices, gender and/or sex discrimination, and
defamation against García. Costco answered the complaint,
Docket No. 9, and denied all allegations of wrongdoing,
insisting that it had a legitimate justification for all actions
taken with respect to García.

On June 2, 2016, Plaintiff and co-defendant National Union
Fire Insurance Company of Pittsburgh PA ("National") filed a
joint notice of voluntary dismissal seeking dismissal of all
claims against National. Docket No. 81. Partial Judgment was
entered accordingly. Docket No. 82.

On January 8, 2016, Costco moved for summary judgment.
Docket No. 59. Plaintiff opposed and Costco replied. Docket
Nos. 66 and 75. In view of the motion for summary judgment,
the pretrial conference and jury trial originally scheduled for
October, 2016, were vacated sine die. Docket No. 84.

## II. Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(If a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.) The court must examine the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor. *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986))("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")

A party opposing a properly supported motion for summary judgment, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248(quoting Fed. R. Civ. P. 56(c)). The party cannot rest on his/her own allegations without "any significant probative evidence tending to support the complaint." *Id*. at 249.

Moreover, pursuant to Local Rule 56 of the United States District Court for the District of Puerto Rico, a party opposing a motion for summary judgment must submit a counter-statement, which "shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation." D.P.R.R. 56(c). Properly supported facts contained in an statement of uncontested facts shall be deemed admitted unless controverted in the manner prescribed by the local rule. D.P.R.R. 56(e).

Finally, because this is a diversity case, the Court must follow the substantive law, including the choice of law rule, that would be applied by the courts of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### III. Factual Findings

The following factual findings are taken from the parties'
statements of uncontested facts ("SUF") and supporting
documentation. Upon reviewing the record, the court finds the
following facts are undisputed:

*Plaintiff's work history with Costco*

1. García began to work for Costco on November 15, 2002
as a Meat Wrapper in the Meat Department of Costco store
#365, located at Plaza Centro Mall in Caguas.

2. García began reporting directly to Mr. Iván Colón, then
Meat Manager.

3. On or about 2006, García was promoted to Meat Cutter
within the same department at store #365.

4. On or around January 2009, García was awarded a
plaque and publicly recognized for his work performance.

5. On 2010, García received another plaque during a
Manager's meeting, when he was publicly named Employee of
the Month.

6. García was promoted to Meat Manager on or about July,
2011.

7. As Manager of the Meat Department, García's job
functions included conducting inventory of all goods within

his department, among other responsibilities.

8. On February 15, 2012, García's salary as Meat Manager was increased from $62,000 to $64,500.00.

9. On April 8, 2013, García's salary was increased from $64,500.00 to $65,790.00.

### Problems with the inventory

10. According to Steve Stoddard, Costco's Regional Manager, on October 28, 2013, he was reviewing inventory numbers when he noticed an ending inventory of approximately $297,000.00 for Costco store #365.[1]

11. According to Stoddard's Sworn Statement, an ending inventory of $297,000.00 is "an extremely high ending inventory" when compared to other Costco locations in the East Coast of the United States.

12. David Soto, Costco's Manager for store #365 at the time,

---

**1.** Plaintiff opposed this SUF on the basis that a sworn statement is inadmissible for summary judgment purposes and because Mr. Stoddard supposedly did not represent that he had personal knowledge of the facts. Also, because the sworn statement was not notarized. After reviewing Fed. R. Civ. P. 56(e) the court understands that Mr. Soddard declared events based on his personal knowledge. Moreover, a boiler-plate objection that the exhibit has not been properly authenticated is not enough. *Int'l Shipping Agency, Inc. v. Union de Trabajadores de Muelles Local 1740*, No. CIV. 12-1996 SCC, 2015 WL 5022794, at *3 (D.P.R. Aug. 21, 2015).

was contacted and asked to perform a physical inventory of the Meat Department.

13. The inventory count resulted in an ending amount of $315,000.00.

14. It was decided that a manual count of the actual cases and pounds of meat in the Costco store would be carried out. The count resulted in a discrepancy of $114,000.00.

15. On November 4, 2013, plaintiff and Nayreth Ríos, Internal Auditor for Costco, participated in an inventory count.

16. On November 5 of 2013, García participated in an inventory of the Meat Department for Costco store #365, with David Soto and Rocío Mendez, Assistant Manager for Costco store #365, and the review resulted in an ending inventory of $315,000.00.

17. According to Steve Soddard, he met with Frank Chiriboga, Costco's Regional Meat Manager on November 5, 2013, and after comparing the inventory results, found a hidden shrinkage of $146,000.00.

18. A review of the inventory entries was performed and it was determined that on the 27th, 28th and 29th of October 2013, manual entries of approximately $114,000.00 were made in the system.

19. As a result of the inventory investigation, García met with Thomas Farano, Costco's Regional Loss Prevention Manager, Jose Mendez, Costco's Loss Prevention Manager, and Frank Chiriboga.

20. At that meeting, García was questioned regarding the alleged merchandise that was missing in the inventory.

21. García stated during his deposition that he could not answer the questions that they asked him at the meeting because he "could not explain something that [he] did not know."

22. On November 13, 2013, Jerry Dempsey, Vice President of Operations of Costco, interviewed García regarding the inventory discrepancy in the Meat Department.

23. García's employment was terminated on November 29, 2013.

24. On January 22, 2014, García sent a letter to Joe Portera, Costco's Executive Vice President, asking him to reconsider his employment termination and averring that other "younger coworkers at the store, both male and female" have been involved in "proven cases of integrity issues" and are still working with the company.

### The AMEX incident

25. Costco employees Beatriz Gómez, Rocío Mendez, Johanne Oquendo and Gerry Medina were involved in an incident in which a client used an American Express card to defraud Costco for an approximate amount of $95,000.00.

26. The AMEX fraud occurred in 2012, when a person came in to the store and made some fraudulent transactions, mostly in liquor purchases, totaling $95,000.00 with an AMEX card that did not belong to him.

27. Due to the AMEX fraud, Costco procedures were changed regarding those types of transactions to require that the owner of an AMEX card be present in the store to be able to proceed with the purchase.

**IV. Analysis**

*A. Just cause for termination*

Plaintiff seeks redress under Law No. 80, known as the Puerto Rico Wrongful Discharge Act, which protects individuals in their employment from dismissal without just cause. P.R. Laws Ann. tit. 29, § 185a. Law No. 80 defines a dismissal without just cause as "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." *Id*. Under the statute, the burden falls on the employer to prove that it had just cause for the termination.

§ 185k. *See also, Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.,* 152 F.3d 17, 28 (1st Cir.1998).

Law No. 80 also lists several circumstances under which termination is considered to be justified, including: (1) that the worker engages in a pattern of improper or disorderly conduct; (2) that the employee does not perform his job-related functions in an efficient way, or does so belatedly or negligently, or in violation of the standards of quality of the product that is manufactured or handled by the establishment; (3) that the employee repeatedly violate the rules and regulations reasonably established by the employer provided that a written copy of those rules and regulations has been provided to the employee; (4) full, partial or temporary closing of the business operations; (5) changes in technology or reorganization, as well as changes in the style, design or nature of the product that is manufactured or handled by the establishment and changes in the services rendered to the public; (6) staff reductions as a result of reduction in the production volume, or in the anticipated sales or earnings at the time of the discharge. § 185b.

Costco avers that it had just cause to terminate García's employment and, thus, is not liable under Law No. 80. According to Costco, García's dismissal was not prompted by

a "mere whim or fancy," but was a direct result of García's failure to comply with his job-related duties, particularly, as it pertained to an inventory discrepancy that took place around October of 2013. Costco argues that it conducted a thorough investigation and concluded that García had engaged in "serious misconduct and incompetence in the performance of his job." Docket No. 59-1 at page 9. As a result, the company fired him on November 29, 2013.

It is undisputed that by late October, early November of 2013, there was a discrepancy between the ending inventory and the actual physical inventory in store #365. It is also undisputed that García, as Manager of the Meat Department, was charged with conducting inventory of the goods within his department. Likewise, there is no controversy of material fact regarding the extensive investigation that Costco carried out to find out what caused the inventory discrepancy, and who was responsible. Furthermore, García admitted that, when confronted with the information, he was unable to account for the discrepancy between the ending inventory reported and the physical inventory.

Taking these uncontested facts, and mindful that "the court's role is not to judge whether personnel decisions are

correct or wise,"[2] I find that Costco has met its burden of showing that the dismissal of García was justified. Even though the plaintiff goes to great length to establish that he received accolades as an employee and had not been reprimanded before, Law No. 80 does not require a pattern of repeated violations. *See Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 75 (1st Cir. 2002)(citing *Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650 (1994))("First, Law 80 does not invariably require repeated violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await further occurrences.")

Here, Costco showed that its decision to fire García was not a "mere whim," but was motivated by his inability to explain a substantial inventory discrepancy on the department he managed.[3] "Generally, dismissals for good cause are those

---

**2.** *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, Civ. No. 04-2002 (RLA), 2006 WL 2092570, at *4 (D.P.R. July 26, 2006).

**3.** The only factual controversies that I could identify on the record are not genuine issues of material fact and, thus, do not defeat summary judgment. The standard of Fed. R. Civ. P. 56(c), "[b]y its very terms...provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

linked to the ordinary conduct of business." *Hoyos v. Telecorp Communications, Inc.*, 405 F.Supp.2d 199, 206 (D.P.R. 2005)(citing *Morales v. Nationwide Ins. Co.*, 237 F.Supp.2d 147, 153 (D.P.R.2002)); see also, *Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036 (D.P.R.1985)(finding that the employer had good cause for termination where an employee violated the internal procedures of the company.)It is not incumbent upon the court to determine whether Costco's decision was a wise one or whether further chances should have been afforded to García. *See, Gonzalez*, 304 F.3d at 69 (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)) ("[Federal courts] do 'not sit as a super-personnel department that reexamines an entity's business decisions.' 'No matter how medieval a firm's

---

motion for summary judgment; the requirement is that there be no genuine issue of material fact."*Anderson*, 477 U.S. at 247-48. For example, though García disputes that he was solely responsible for the inventory figures, he admitted that dealing with the inventory was part of his functions as Manager of the Meat Department. *See* Docket No. 66-2 at pages 87 and 88. Likewise, although the investigation into whether García stole the merchandise or intentionally manipulated the inventory figures was inconclusive, it is undisputed that he failed to comply with his job duties of overseeing the inventory and reporting any issues. This fact alone shows that there is no genuine issue as to whether the decision to terminate García's employment was made on a mere whim in violation of Law 80.

practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere.'")

The defendant is thus entitled to summary judgment on the plaintiff's Law 80 claim.

### B. Gender Discrimination

García also seeks relief under Puerto Rico's Law No. 100 and Law No. 69 for Costco's alleged discriminatory actions. Plaintiff complains that "other similarly situated female employees and other male employees, who had purportedly engaged in the same conduct and/or alleged inappropriate conduct" as García, were never investigated or reprimanded. Docket No. 1 at ¶¶ 45, 48- 50. To give his claims some support, García mentions an incident where three female employees were allegedly involved in an event that resulted in the loss of $95,000.00. Docket No. 1 at ¶ 50. The plaintiff also vaguely mentions an incident involving female employees and an "issue with the chemicals." Docket No. 1 at ¶ 51.

Costco maintains that plaintiff cannot succeed in his gender discrimination cause of action, and the court is persuaded.

Law No. 100 is Puerto Rico's general employment discrimi-

nation statute[4] whereas Law 60 specifically prohibits discrimi-
nation on the basis of sex. In practical terms, "Law 69, and Law
100 serve virtually identical purposes and outlaw virtually
identical behaviors." *Miro Martinez v. Blanco Velez Store, Inc.*,
393 F.Supp. 2d 108, 114 (D.P.R. 2005). As the First Circuit has
noted, "[i]ndeed, Law 69 is merely an amplification of the
principles contained in Law 100." *Rodriguez-Torres v. Caribbean
Forms Manufacturer, Inc.*, 399 F.3d 52, 61 (1stCir. 2005).

   Law 100 establishes a rebuttable presumption that the
employer has discriminated illegally unless the employer can
show that the discharge was justified. *See* P.R. Laws Ann. tit.
29, § 148. The presumption "is triggered when it is shown that
the employer lacked 'just cause' to discharge or take other
adverse action with regard to the employee." *Alvarez-Fonseca*,
152 F.3d at 28.

   I have already concluded that Costco has met its burden of
showing that García's dismissal was justified. Therefore, the
initial presumption that plaintiff's dismissal was discrimina-
tory under Law No. 100 was not triggered. *See Alvarez-Fonseca*,

---

**4.**  Law 100 prohibits discrimination on account of sex, color, race, origin,
political or religious beliefs, social condition or political affiliation. P.R.
Laws Ann. tit. 29, § 146.

152 F.3d at 28 (If, during the "just cause" analysis guided by Law No. 80, the employer fails to prove by a preponderance of the evidence that it had "just cause" to dismiss the employee, the Law 100 presumption of discrimination is triggered.)[5] Since the initial presumption was not met, the burden-shifting analysis ends here.

Nevertheless, I find that even assuming that the presumption of discrimination was triggered, defendant met its burden of presenting sufficient evidence to prove that its decision to

---

**5.** The next step of the burden-shifting framework would require the employer to prove by a preponderance of the evidence that the "otherwise unjustified" termination was not the result of discriminatory motives. *Alvarez-Fonseca*, 152 F.3d at 24-8 (discussing the differences between the analysis under the "familiar" *McDonnell Douglas* framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the local statute). Only by doing so can the employer rebut the Law No. 100 presumption. *See Ibanez v. Molinos de P.R., Inc.*, 14 P.R. Offic. Trans. 58, 70 (1983). "In that sense, the local legislation is more favorable to plaintiff than its federal counterpart." *Id.* at page 73. However, "the burden of proof on the ultimate issue of discrimination remains with the plaintiff," who must establish that "even if the dismissal was justified, the defendant nevertheless violated Law 100 because the dismissal was motivated by discriminatory animus..." *Alvarez-Fonseca*, 152 F.3d at 28. If the employer surpasses that hurdle, the employee has the opportunity to show that the justification proffered is a mere pretext. *Leon v. Rest. El Tropical*, 154 D.P.R. 249, 288 (2001).

terminate García's employment was not motivated by a discriminatory animus. Costco presented proof that the reason for dismissing García was his alleged failure to adequately account for the inventory shrinkage. Once Costco noticed the inventory discrepancies, it embarked on a detailed investigation, interviewed García on numerous occasions, and conducted inventory counts in García's presence. García himself admitted that he could not explain the inventory discrepancies and, by all accounts, wasn't even aware of the inventory inconsistency until his superiors started inquiring. *See* García's deposition at page 38, Docket No. 66-1 at page 21.

Moreover, it is undisputed that, throughout his career at Costco, García rose through the ranks, receiving several promotions salary increases, and positive performance reviews. This shows that García's gender did not affect his performance in Costco over the years, and that he never complained to his employer about being discriminated on account of his gender, up to the point where he was involved in the inventory debacle.

In addition, the decisionmakers were mostly male and García cannot point to a single statement or behavior by the males involved from which an inference of discrimination

could be drawn.

To rebut the presumption of discrimination, Costco "had to prove that the existence of discrimination was less probable than its inexistence." *Ibanez*, 114 D.P.R. at 75-76. Given the facts at hand, I conclude that Costco has established that García's termination was not the result of discriminatory motives.

The last step of the inquiry is whether the justification given by Costco is a mere pretext. García says that the real reason he was fired was because of Costco's favoritism to similarly situated female employees. The court finds that the record is devoid of facts to support this allegation.

García mainly points to two incidents as evidence of gender-based discrimination, namely, the AMEX incident and the vaguely-referenced situation involving the improper handling of chemicals at Costco Store #365.[6]

---

**6.** The third incident that García mentions, one involving Rocío Mendez, General Manager of the store, and a male employee, Iván Colón, who allegedly made improper use of García's password, is not properly supported by the record and therefore, will not be discussed. Where a plaintiff's proffered evidence is mostly based on "his own personal observations" without "adequate factual information," plaintiff fails to create a genuine issue of material fact to defeat a properly supported motion for summary judgment. *Mariani-Colon v. Department of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 222(1st Cir. 2007).

The AMEX incident took place when a person used an AMEX card that did not belong to him at the Costco store to purchase $95,000.00, mostly in liquor. Though plaintiff avers in his opposition to the motion for summary judgment that "three female managerial employees were involved," Docket No. 66 at page 15, in his deposition, plaintiff stated that Gerry Medina, an Assistant Manager of the store, was also involved. Docket No. 66-2 at page 77. Gerry Medina is a male. *Id*. The extent of participation of the employees in the AMEX incident is also unclear. In essence, though García tries to stretch the fraudulent event to support his claims of disparate treatment, there is simply not enough to establish pretext.

Likewise, the situation involving Johanne Oquendo and the improper use and payment of chemicals at the store is unclear and poorly explained, and García has not met his burden of establishing that Oquendo was an employee "similarly situated to him in all relevant respects that [was] treated differently by the employer." *Mariani-Colon*, 511 F.3d at 222.

A review of the portions of García's deposition that the parties included as exhibits shows that plaintiff spoke about the incidents involving other employees without making any mention whatsoever that there was gender-bias involved.

García spoke of "the other people" being involved in similar incidents but suffering no consequences, and said that he was fired because he told about "other employees." Docket No. 66-2 at pages 112-114. Furthermore, in García's letter of January 22, 2014, he mentions "There are other younger coworkers at the store, both male and female, that have been involved in proven cases of identity issues that are still working with the company." Docket No. 66-5 at page 4.

In fact, it wasn't until he was under investigation for the inventory incident that he first complained about disparate treatment. By García's own account, as related in the complaint, after the November 14, 2013 meeting with Farano, Mendez and Chiriboga, García complained to Jerry Dempsey, Costco's Puerto Rico Regional Manager, that there was gender-based disparate treatment in the store. Docket No. 21 at ¶43. Before November of 2013, there is not a single instance in which García alleges that the complained about discriminatory treatment.[7]

_____

**7.** In addition, although an employee does not need to prove that he was replaced by someone outside the protected group to fulfill a prima facie discrimination case, the fact that García has not shown that he was replaced by a woman has "evidentiary force." *See Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir. 1990).

Nothing in the undisputed facts would allow a rational fact finder to infer that unlawful gender discrimination was the motivating factor in García's termination. If any inference is to be made, it is that the incident regarding the inventory shrinkage was the real cause for the dismissal. Taking all these elements into consideration, Costco has established that plaintiff cannot maintain a gender discrimination cause of action.

### C. Retaliation

Costco also seeks summary dismissal of plaintiff's retaliation claims under Puerto Rico's Law Nos. 100 and 69. García posits that he engaged in statutorily protected conduct when he complained of gender-based disparate treatment to Costco officials prior to his dismissal.

Law No. 69 contains a retaliation provision that mirrors the one found in Title VII of the Civil Rights Act. *See* P.R. Stat. Ann. T. 29 § 1340. To prove a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in protected conduct; (2) he suffered an adverse employment action; (3) a causal nexus exists between the protected conduct and the adverse

employment action. *Calero-Cerezo v. U.S. Dept. of Justice*, 355
F.3d 6, 25 (1st Cir. 2004)(citing *Gu v. Boston Police Dep't.*, 312
F.3d 6, 14 (1st Cir.2002)).

Once the plaintiff makes out this prima facie case, the
burden shifts to the defendant to articulate a legitimate,
non-retaliatory reason for its actions. *Collazo v. Bristol–Myers
Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir.2010).  If the defendant
meets this burden, the burden shifts back to the plaintiff to
show that the defendant's explanation is a pretext for unlawful
retaliation. *Id*.

Protected conduct contemplates "the filing of formal
charges of discrimination"and also,"informal protests of
discriminatory employment practices, including making
complaints to management, writing critical letters to custom-
ers, protesting against discrimination by industry or by society
in general, and expressing support of co-workers who have
filed formal charges." *Planadeball v. Wyndham Vacation Resorts,
Inc.*, 793 F.3d 169, 176 (1st Cir. 2015) (quoting *Sumner v. U.S.
Postal Serv.*, 899 F.2d 203, 209 (2nd Cir.1990)).

Plaintiff arguably fulfills the first two prongs,[8] and I find

---

**8.**   The reason why I say "arguably" is that, though García avers that he
complained of gender-based discrimination, his deposition testimony

that the causal nexus between the protected conduct, i.e., complaining to his supervisors about discrimination, and plaintiff's termination, is paper-thin, but sufficient to make out a prima facie case. García relies on the temporal proximity between his alleged complaints and his dismissal, as primary evidence of a strong causal connection.  The First Circuit has reinforced the doctrine that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Calero-Cerezo*, 355 F.3d at 25(quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, (2001)). Here, the temporal proximity is very close, since García met with several of Costco officials during the beginning of November and was fired on November 29, 2013.

---

says otherwise. At no time did he explicitly tell his supervisors that there was gender disparity afoot at Costco, merely referring to "other people" who had done similar things but were not fired. Such general statements do not suffice. To prevail on a differential treatment claim, plaintiff must show that other employees "[]were similarly situated and that [he] was treated differently." *Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002). After making that showing, García must prove that gender was the reason for that difference. *Id*.

Based on that alone, García makes out a prima facie case of retaliation.

But even assuming, *arguendo*, that plaintiff met his burden of establishing a prima facie case, I find that Costco has articulated a legitimate, non-retaliatory reason for its actions and that plaintiff could not establish that the reason proffered was a mere pretext.

At this stage, Costco had to identify enough admissible evidence to allow a rational fact finder to find that unlawful discrimination was not the cause of García's dismissal. As previously explained, Costco showed through affidavits and deposition excerpts that the reason for terminating García's employment was not fueled by discriminatory animus, but was directly related to the inventory discrepancies on the department that García oversaw. Discrepancies that García was supposedly unaware of, and could not explain.

García insists that Costco's explanation is a ruse to conceal the underlying motive for his dismissal: retaliation for bringing up that other employees had done similar things and were not reprimanded. When asked at his deposition on what did he base his allegations of retaliation he said the following: "I think that I was dismissed unjustifiably and, and they took reprisals

against me because I told them that they, about the other employees, that, that they had done nothing against them. There was no other reason. My General Manager fires me without being able to give me any reason for my dismissal." Docket No. 66-5 at page 112.

Mere speculation and conjecture are not enough to establish pretext. At the ultimate part of the burden-shifting analysis, García would have to show both that "the employer's articulated reason for [the discharge was] a pretext and that the true reason [was] discriminatory." *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 34 (1st Cir. 2001). Pretext may be shown by, among others, presenting evidence that "discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." *Straughn*, 250 F.3d at 36. Also, by evidence of "differential treatment in the workplace,"[9] and "by showing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons."*Id*. at 42.

Other than his own allegations, García has not tendered solid evidence that he was singled out or treated differently

---

**9.**   *Id*. at 37.

than other similarly-situated employees. Therefore, the tenuous disparate treatment evidence presented by García is insufficient to enable a reasonable factfinder to conclude that he was fired because of some underlying discriminatory motive.

### D. Libel and Defamation

Lastly, García claims that he was the subject of slander and defamation by Thomas Farano, Regional Loss Prevention Manager, José Méndez, Loss Prevention Manager and Frank Chiriboga. *See* Docket No. 21 at ¶40. According to García, "defamatory statements" were uttered or published by Costco's agents and caused a damage to his reputation. *Id*. at ¶42. The alleged incidents of slander or/and defamation are as follows: (1) on November 14, 2013, García was interviewed by Farano, Méndez and Chiriboga and was "falsely slandered" with a "direct accusation of manipulating the inventory and stealing;"[10] (2) defamatory statements were uttered or published by Costco's agents and were heard by third parties;[11] on November 20, 2013, García had an interview with Farano,

---

**10.** *See* Docket No. 21 at ¶40.

**11.** *See* Docket No. 21 at ¶42.

Chiriboga and Mendez where he was "again defamed and slandered."[12]

To prevail under Puerto Rico's Libel and Defamation Law, P.R. Stat. Ann. T. 32 §§ 3141-3149, a plaintiff must prove: "(1) that the information is false; (2) that he or she suffered real damages; and (3) that in the case of a private figure, the publication was negligently made." *Gonzalez Perez v. Gomez Aguila*, 312 F.Supp. 2d 161, 173 (D.P.R.2004)(citing *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 98 (1st Cir.1996)). For both libel and slander, it is required that plaintiff establish that the statements challenged are false. *See* P.R. Stat. Ann. T. 32 § 3142 (defining libel); and § 3143 (defining slander).[13] "[B]oth libel and slander constitute defamation, or the infringement in the interest of reputation by means of a communication 'which tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided.' " *Santiago*, 731 F.Supp. 2d at 209 (quoting *Rodríguez v. Clark Color Lab.*, 732 F.Supp. 279,

---

**12.** *See* Docket No. 21 at ¶¶ 47-48.

**13.** "Libel is defamation that comes in the written form,"while "slander...takes place when the defamation is oral." *Luis Santiago v. Santiago*, 731 F.Supp.2d 202, 209 (D.P.R. 2010)(internal citations omitted).

283 (D.P.R.1990)).

Where the communications take place "between persons having business in partnership, or other similar associations," the statute provides that malice shall not be presumed. P.R. Stat. Ann. T. 32 § 3145. *Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036 (D.P.R. 1985). Moreover, intracorporate communications regarding the reasons for an employee's discharge are covered by a conditional privilege. *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331, 353-54 (1992). The privilege is conditional because it is lost if the employer abuses it by giving the statement "excessive publicity" or by publishing it for "improper reasons." *Soto-Lebron v. Federal Express Corp.*, 538 F.3d 45, 63 (1st Cir. 2008).

Even viewed in the light most favorable to plaintiff, I cannot find sufficient evidence to sustain a claim of defamation against Costco. García's allegations of defamation are the textbook definition of "conclusory." All that plaintiff puts forth are: (1) conversations that he sustained with his superiors as part of the investigation into the inventory discrepancies; (2) alleged information relayed by his father-in-law and other Costco employees; (3) two emails sent by Jerry Dampsey to Yoram Robanenko and David Soto, dated November 14 and

15, 2013. Docket No. 66-17 at ¶¶ 14, 18-23, 33-36, and 44.

   The alleged accusations of theft made by his superiors during the interviews, and the communications between Costco's managers, are covered by the qualified privilege of intra business communications. *See Porto*, 132 D.P.R. at 354-55 (In the "employer-employee sphere," "communications from an 'employer' to managers or supervisors of a discharged employee, regarding the reasons for discharge; communications to prospective employers informing the reasons for the discharge of an employee...", and "communications between supervisors and personnel staff," have been found to be examples of qualified privileges.) Though plaintiff avers that Costco abused the privilege because the reasons for his discharge were "excessively published to others who did not have a right to know,"[14] there is nothing on the record to conclude that Costco engaged in such conduct with knowledge of falsity and reckless disregard for the truth. *See Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036, 1043 (D.P.R. 1985)(citing *Quiñones v. J.T. Silva Banking and Commercial Co.*, 16 P.R.R. 661, 665, 667 (1910),and *Jiménez v. Díaz Caneja*, 14 P.R.R. 9, 17–18

---

**14.**  Docket No. 66 at page 23.

(1908))("Once the privilege attaches, it is incumbent upon plaintiffs to establish by extrinsic evidence the elements for their defamation claim."). In addition, any accusatory remarks made by Costco managers on the course of their interviews with García to investigate the inventory issue are statements of opinion that are not actionable. *See Galdauckas v. Interstate Hotels Corp. No. 16*, 901 F.Supp. 454, 471 (D.Mass. 1995) (Holding that "alleged abusive statements are obviously not statements of fact, but are perhaps derogatory statements of opinion" which cannot be proved false and thus, do not constitute libel.)

The remaining statements–those made by other employees to García–are based on nothing more than hearsay and gossip, and, as such, do not provide a solid basis for a defamation claim. *See Corrada Betances v. Sea-Land Service*, No. CIV. 99–1671(JP), 2000 WL 33687211, at *5 (D.P.R. July 24, 2000)(Finding that the evidence was insufficient to establish a defamation claim where "the evidence does not rise to more than informal rumors" and was not uttered by other employees "during the course of their functions as employees."); *see* also, *Flamand v. American Intern. Group, Inc.*, 876 F.Supp. 356, 366-67 (D.P.R. 1994). Moreover, other than his own averments,

plaintiff has not shown that the statements in questions damaged his reputation or honor.

As such, García has failed to carry his burden of presenting evidence to rebut Costco's motion for summary judgment. *See Ayala-Gerena*, 95 F.3d at 98 (where apellants "failed to establish the existence of a genuine, material triable issue regarding the falsity of the alleged statements" summary judgment is proper).

### V. Conclusion

For the reasons explained, the court finds that no triable issue of fact precludes entering summary dismissal of plaintiff's claims against Costco. Therefore, the motion for summary judgment is granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of November, 2016.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE